UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEYSHA CRUZ, individually, and
NEYSHA CRUZ, as p/n/g of O.F.,
                                    Plaintiff,

                - against -


NEW YORK CITY DEPARTMENT OF
EDUCATION,

                                    Defendant.

**MEMORANDUM
OPINION & ORDER**

18 Civ. 12140 (PGG)


PAUL G. GARDEPHE, U.S.D.J.:

 The Complaint in this action was filed on December 21, 2018, and seeks

injunctive relief under the Individuals with Disabilities Education Act, known as IDEA, 20

U.S.C. § 1400 et seq. (Cmplt. (Dkt. No. 1))  Plaintiff is the mother of O.F., a fifteen year old boy

"who suffers from brain injury, cerebral palsy and seizure disorder." (Id. at ¶ 7).  The Defendant

is the New York City Department of Education ("DOE").

 In Plaintiff's application for a temporary restraining order and preliminary

injunction she seeks (1) an order "revers[ing] [an impartial hearing officer's November 22, 2018]

Final Order on Pendency"; a ruling "that the International Institute for the Brain . . . be deemed

O.F.'s pendency placement"; an order "remov[ing] [Impartial Hearing Officer "IHO"] Robert

Briglio from [Plaintiff's case]"; and an order "enjoin[ing] the reconvening of the impartial

hearing before IHO Robert Briglio with respect to O.F.'s pendency placement in the underlying

due process proceeding." (Cmplt. (Dkt. No. 1) at 7; Order to Show Cause at 1-2)[1]

---

[1] With the exception of the Complaint, the parties have not yet docketed any of the submissions
cited herein.

## **BACKGROUND**

According to the Complaint, Plaintiff's 15-year-old son – O.F. – suffers from brain injury, cerebral palsy, and seizure disorder. His impairments have significantly affected his educational abilities and performance. He is non-verbal and non-ambulatory and he requires a high degree of individualized attention and intervention in the classroom. (Id. ¶ 7)

As the result of a due process complaint filed for the 2017-18 school year, a hearing officer concluded that Defendant New York City Department of Education ("DOE") had not provided O.F. with a free and appropriate public education. The hearing officer awarded Plaintiff tuition reimbursement at the International Academy of Hope ("Hope Academy") for the 2017-18 school year. (Id. ¶ 10) DOE did not appeal that determination. (Id.; see also Liu Decl. ¶¶ 4-5)

On June 21, 2018, Plaintiff informed the DOE that she intended to place O.F. into a different school for the 2018-19 school year – the International Institute for the Brain (the "Brain Institute"). (Cmplt. (Dkt. No. 1) ¶ 11)

Plaintiff rejected the DOE's individualized education plan or "IEP" for O.F. for the 2018-19 school year, and on July 9, 2018, she filed a due process complaint against the DOE, seeking, inter alia, payment for the full cost of tuition at the Brain Institute for the 2018-19 school year. (See Due Process Cmplt. at 3) Her due process complaint also sought a "stay put" or pendency order requiring the DOE to fund O.F.'s education at the Brain Institute during the pendency of the due process proceeding, pursuant to 20 U.S.C. § 1415(j). (Cmplt. (Dkt. No. 1) ¶ 12)

## I.    PROCEDURAL HISTORY

A hearing officer conducted a pendency hearing on August 24, 2018. Plaintiff argued that the Brain Institute's educational program for O.F. was "substantially similar" to the program he had received at the Hope Academy, and that accordingly the placement at the Brain Institute should be deemed O.F.'s pendency placement for the 2018-19 school year. (Id. ¶ 13; Ashanti Aff., Ex. J, at 3)

In a September 4, 2018 Interim Order on Pendency, the hearing officer found that "the reasons why O.F. can no longer attend [the Hope Academy] [are] fundamental to a determination of pendency where pendency lies in a parental placement." (Ashanti Aff., Ex. J, at 3 (citing Mackey v. Bd. of Educ. for Arlington Cen. School, 373 F. Supp. 2d 292, 296 (S.D.N.Y. 2015)). The hearing officer directed Plaintiff to "produce evidence regarding why O.F. can no longer continue attending [the Hope Academy] for the 2018/19 school year for the purpose of determining pendency. Such evidence shall be in the form of documentation from [the Hope Academy] that O.F. can no longer attend the school. Absent such evidence the issue of a substantially similar placement for pendency purposes will not be heard, and the parent's placement at [the Hope Academy] will constitute pendency unless the parties otherwise agree to pendency." (Id. at 4)

Plaintiff appealed the hearing officer's Interim Order on Pendency to a state review officer.[2] Plaintiff contended that the hearing officer had erred in holding that Plaintiff had the burden of demonstrating that O.F. could no longer attend the Hope Academy as a prerequisite to seeking a finding that the parent's placement at the Brain Institute constituted

---

[2]  In September 26 and 27, 2018 emails to the hearing officer, Plaintiff also requested that the hearing officer recuse himself. (See Ashanti Aff., Ex. S)

pendency. Plaintiff also contended that DOE was precluded from challenging Plaintiff's contention that the programs at the Brain Institute and Hope Academy are substantially similar, based on adjudications involving different children who had attended these two schools. (Ashanti Aff., Ex. GG at 4) Plaintiff also requested that the hearing officer – Robert Briglio – be removed from any future hearing in this matter, contending that he had demonstrated that he could not be fair and impartial. (Id.)

DOE argued that the appeal should be dismissed, because Plaintiff had no right to seek review of an interim order of pendency. DOE also argued that the hearing officer had properly required Plaintiff to demonstrate that O.F. could no longer attend the Hope Academy, and had correctly concluded that Hope Academy is O.F.'s pendency placement. (Id. at 4-5) In the alternative, DOE argued that the matter should be remanded to the hearing officer for a determination as to whether the educational program for O.F. at Hope Academy is substantially similar to the educational program for O.F. at the Brain Institute. (Id. at 5) DOE also argued that it was not barred from litigating the issue of whether the two programs are substantially similar. Finally, DOE stated that there was no basis for removing the hearing officer on grounds of bias. (Id.)

In a well reasoned November 16, 2018 decision, the State Review Officer ("SRO") rejected Plaintiff's argument that the hearing officer should be removed for bias, finding that Plaintiff's allegations were baseless. (Id. at 5-6) The SRO further found that Plaintiff had a right to appeal the hearing officer's Interim Order of Pendency. (Id. at 7)

The SRO rejected Plaintiff's collateral estoppel argument, noting that it had not been raised before the hearing officer and could not be raised for the first time on appeal. (Id. at 8) The SRO also noted that the decisions on which Plaintiff premised her collateral estoppel

argument involved different children and different educational programs, rendering the application of collateral estoppel improper. In response to Plaintiff's argument that it was inefficient to permit DOE to continue litigating issues regarding the alleged similarity between the two institutions' educational programs, the SRO noted that "pendency determinations do not require exhaustion at the administrative level before bringing such an action to state or federal court." (Id. at 10 (citing Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199-200 (2d Cir. 2002); Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 455 (2d Cir. 2015))).

As to the merits of the pendency determination, the SRO noted that "[p]endency has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships." (Id. at 11 (citing Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982); Wagner v. Bd. of Educ. Of Montgomery County, 335 F.3d 297, 301 (4th Cir. 2003); Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996))) The SRO further noted that a right to pendency is triggered when a due process complaint is filed, and that a hearing officer facing a pendency request "is expected to issue a decision on pendency as soon as possible." (Id.)

The SRO then addressed the significance – for pendency purposes – of a parent, as here, unilaterally changing the child's placement. After considering the parties' arguments and the relevant case law, the SRO concluded that the "educational placement" for purposes of a pendency determination turns not on the physical location of the services provided or the identity of the provider, but instead "'refers only to the general type of educational program in which the child is placed.'" (Id. at 13 (quoting T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 171 (2d Cir. 2014) (quoting Concerned Parents & Citizens for the Continuing Educ. at

Malcolm X (PS79) v. New York City Bd. of Educ., 629 F.2d 751, 753 (2d Cir. 1970)) The SRO
further concluded that where a parent unilaterally changes a placement, a school district may
nonetheless be required to fund the placement, where the new private programing the parent
selects "remains substantially similar to the private programing that was endorsed in the ruling
granting the parent[] tuition reimbursement." (Id. at 14)

 The SRO then analyzed the program that O.F. had received at Hope Academy as
well as the new program at the Brain Institute. After reviewing the evidence offered before the
hearing officer, the SRO concluded that "there are a number of similarities between the
programs." (Id. at 16) The SRO noted, however, that the programs differ as to parental
counseling and training and assistive technology services, and that it was unclear whether the
Brain Institute could offer the vision services O.F. had received at Hope Academy. (Id. at 17)

 While concluding that the evidence "shows there are a large number of
similarities between [the programs at Hope Academy and the Brain Institute], the SRO found
that "the evidence is still incomplete," and that a remand to the hearing officer was necessary to
determine (1) whether O.F. was receiving necessary vision services at the Brain Institute, and
whether the parent counseling and training services and assistive technology services offered at
the Brain Institute were comparable to those provided at Hope Academy. (Id.)

 While finding that it was not unreasonable for the hearing officer to seek an
explanation for why the parent had changed the placement from Hope Academy, the SRO ruled
that the hearing officer erred in making a determination concerning substantial similarity
"contingent on the parent's production of evidence that the student can no longer attend [Hope
Academy]. . . . [T]he [hearing officer] cannot require that the parent first show the student was
incapable of attending the school before reaching the issue of substantial similarities." (Id. at 18)

The SRO's November 16, 2018 decision closes with a remand to the hearing officer to supplement the record as his has directed, and to "render a determination of whether the educational placement provided by [Hope Academy] in the 2017-18 school year and [the Brain Institute] in the 2018-19 school year are substantially similar for purposes of the student's stay-put placement." The SRO directed the hearing officer to make this determination within twenty days of his decision. (Id.)

On November 22, 2018, Hearing Officer Briglio issued a final order denying Plaintiff the desired pendency placement, refusing to consider the substantial similarity issue, and ruling that O.F.'s pendency placement is Hope Academy and not the Brain Institute. (Ashanti Aff., Ex. HH). The hearing officer's order does not address the SRO's decision in any fashion, and it appears that the hearing officer was not aware of the SRO's decision at the time he issued the November 22, 2018 Final Order on Pendency.

On December 17, 19, and 21, 2018, DOE made submissions to the hearing officer stating that the SRO had directed a continued pendency hearing, and asking whether a previously scheduled date for the impartial due process hearing would be used for the continued pendency hearing. (Liu Decl., ¶¶ 18-19 and Ex. 3) On December 24, 2018, Hearing Officer Briglio sent an email to DOE stating that he had "rendered a final pendency decision, . . . so we should proceed to the merits [on January 10, 2019]." (Liu Decl., Ex. 4)

Plaintiff filed the instant action on December 21, 2018. (Cmplt. (Dkt. No. 1)) Both sides then requested that the hearing officer adjourn the January 10 impartial hearing. (Lui Decl., Exs. 4, 5)

On January 4, 2019, Hearing Officer Briglio sent an email to the DOE reiterating that he had rendered a "final pendency order" in November 2018, and that the January 10, 2019 impartial hearing would proceed as scheduled. (Liu Decl., Ex. 4)

## II. PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

The Complaint seeks a temporary restraining order and preliminary injunction "revers[ing] [the hearing officer's November 22, 2018] Final Order of Pendency"; a "ruling that [the Brain Institute] be deemed O.F.'s pendency placement"; an order "remov[ing] IHO Robert Briglio from [Plaintiff's case]"; and an order "enjoin[ing] the reconvening of the impartial hearing before IHO Robert Briglio with respect to O.F.'s pendency placement in the underlying due process proceeding." (Cmplt. (Dkt. No. 1) at 7)

DOE contends that Plaintiff's request for injunctive relief should be denied in its entirety. As an initial matter, DOE argues that Plaintiff lacks standing, and that the matter is not ripe for judicial review, because Plaintiff has not exhausted her administrative remedies. (Def. Br. at 8-12, 14-17) DOE also argues that this Court should dismiss this case because of Plaintiff's failure to join a necessary party, or abstain from exercising jurisdiction pursuant to the Younger doctrine. (Id. at 6-7, 17-18) DOE also contends that Plaintiff's claim for injunctive relief should be denied, because Plaintiff has not demonstrated irreparable harm. (Id. at 13-14) Finally, DOE argues that O.F.'s pendency placement is Hope Academy, and asserts that this Court should not "conduct its own fact-finding and develop the record on this question when the state administrative tribunals remain open to Plaintiffs and capable of resolving the question of substantial similarity as ordered by the SRO." (Id. at 22)

8

# DISCUSSION

## I.   STANDING AND SUBJECT MATTER JURISDICTION

DOE argues that Plaintiff lacks Article III standing, because she has not demonstrated an injury in fact or that any injury is traceable to DOE. DOE further contends that this Court lacks subject matter jurisdiction, because Plaintiff has not exhausted her administrative remedies. (Id. 8-12, 14-17)

### A.   Standing

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)). Moreover, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," where the violation "entail[s] a degree of risk sufficient" to indicate a resulting concrete harm. Spokeo, 136 S. Ct. at 1550; see also Heldman v. Sobol, 962 F.2d 148, 154 (2d Cir. 1992) ("Congress may create a statutory right the alleged violation of which constitutes injury in fact.").

Accordingly, "[t]he denial of . . . a procedural right created by the IDEA . . . constitutes an injury sufficient to satisfy the standing requirement." S.W. v. New York City Dep't of Educ., 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009). Indeed,

> IDEA's procedural guarantees . . . serve not only to guarantee the substantive rights afforded by the Act; the procedural rights, in and of themselves, form the substance of IDEA. Congress addressed the problem of how to guarantee substantive rights to a diverse group by relying on a process-based solution. Thus, Congress envisioned that compliance with the procedures set forth in IDEA would ensure that children with disabling conditions were accorded a free public education. The central role of the IDEA process rights bears witness that Congress intended to create procedural rights the violation of which would constitute an injury in fact.

Heldman, 962 F.2d 148 at 155 (citations omitted).

In arguing that Plaintiff has not demonstrated an injury in fact, DOE focuses solely on whether there is an imminent risk that Plaintiff will have to pay tuition to the Brain Institute, or will have to withdraw O.F. from that school. (See Def. Br. at 9 ("In sum, with Parent's payment obligations suspended and without a plausible allegation that the Parent will be forced by [the Brain Institute] to withdraw O.F. from school, Plaintiffs lack an injury in fact.")) But DOE has not addressed whether Plaintiff has suffered a violation of a procedural right under IDEA sufficient to establish the requisite injury.

IDEA includes a "stay put" provision, which provides that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).[3] "Under the IDEA, a 'stay put' is a procedural right." A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford, 47 F. App'x 615, 616 n.2 (2d Cir. 2002). Plaintiff contends that the Brain Institute constitutes O.F.'s

---

[3] On July 9, 2018, when the due process complaint was filed, O.F. was enrolled at the Brain Institute. (See Pltf. Br. at 3 ("On July 9, 2018, for the start of the 2018-18 school year, Parent moved O.F. from [Hope Academy] to [the Brain Institute]"); Ashanti Aff., Ex. KK (enrollment contract providing that the Brain Institute school year begins July 9, 2018))

"then-current educational placement," and therefore the Brain Institute is O.F.'s pendency

placement rather than Hope Academy. (Pltf. Br. at 4) Before the hearing officer, DOE argued

that Hope Academy is the pendency placement. (See Ashanti Aff., Ex. J at 3) The hearing

officer accepted DOE's argument in his Interim Order of Pendency, citing the absence of

"evidence regarding why O.F can no longer continue attending [Hope Academy] for the 2018/19

school year." (Id. at 4)

On appeal, the SRO directed the hearing officer to obtain additional evidence

concerning the issue of whether the Brain Institute's educational program for O.F. for the 2018-

19 school year is "substantially similar" to Hope Academy's 2017-18 educational program for

O.F., and to make a determination as to that issue. (Ashanti Aff., Ex. GG at 18) The hearing

officer ignored the SRO's directive and issued a Final Order of Pendency confirming that Hope

Academy is O.F.'s pendency placement. Plaintiff was thus denied what she contends is the

pendency placement that the law requires. Accordingly, Plaintiff has demonstrated an injury in

fact in the form of a violation of Plaintiff's procedural right pursuant to 20 U.S.C. § 1415(j).[4]

C.f. Heldman, 962 F.2d 148 at 155-56 ("Congress . . . conferred on the parents of disabled

children an enforceable legal right to an impartial hearing officer. If Heldman's allegations are

correct, the New York system of selecting hearing officers . . . denied him his due process rights

under IDEA and resulted in actual injury.").

Plaintiff also contends that she has suffered an injury in fact based on her future

financial obligations to the Brain Institute. (See Pltf. Br. at 7; Ashanti Aff., Ex. KK) The

Second Circuit has stated that a plaintiff's "contractual obligation to pay private-school tuition . .

---

[4] By contrast, in Cohen v. Department of Education, 2018 WL 6528241 (S.D.N.Y. Dec. 12, 2018) – relied on by DOE (Def. Opp. at 9) – the hearing officer had ruled in favor of plaintiffs on the pendency issue.

. even if her IDEA claim against [DOE] fails to result in funding" is sufficient to establish an injury in fact for standing purposes. See E.M. v. New York City Dep't of Educ., 758 F.3d 442, 457, 459 (2d Cir. 2014). In E.M., plaintiff withdrew her daughter from a public school and enrolled her in a private school; she sued DOE seeking an order directing DOE to pay the school's tuition. Id. at 446. The enrollment contract between plaintiff and the school stated that plaintiff "assumed . . . 'complete financial responsibility for the enrollment' and that plaintiff 'agree[d] to pay' tuition and fees." Id. at 457. The court emphasized that "E.M.'s written contract nowhere conditioned her tuition liability on her ability to obtain funding from the Department," and rejected the suggestion that parts of the contract that were left blank – including the payment schedule and deposit amount – voided the agreement. Id. at 458. The court did not suggest that the absence of a due date for the tuition payment was of any consequence to its injury in fact analysis. To the contrary, the court stated that "fearing exposure to suit for nonpayment" at some undefined time in the future could constitute an injury in fact. Id. at 459.

As with the enrollment agreement at issue in E.M. v. Dep't of Education, the enrollment agreement here reflects Plaintiff's contractual obligation to pay at least some tuition, even if Plaintiff cannot obtain funding from DOE:

> It is understood and agreed that the enrollment of Student is for the full academic year and the obligation to pay tuition is unconditional and cannot be apportioned or mitigated except as expressly provided herein. . . .
> It is understood Parent may seek public funding from the local school district to pay for Student's Full Tuition due to [the Brain Institute] for the School Year by asserting Student's due process rights. In the event Parent is required to file a complaint against the local school district for funding, the tuition obligations outlined in Sections 5, 6 and 7 will be suspended, except those obligations outlined in sections 8(a), 8(b), until a final determination/decision is issued by an administrative judge or appellate court, and then all moneys then-due will become immediately due within thirty (30) days of the final adjudication.

     (a) It is understood Parent may seek public funding from the local school district to pay for Student's Full Tuition due to [the Brain Institute] for the School Year by asserting Student's due process rights by seeking an Order on Pendency. In the event Parent seeks and is granted an Order on Pendency by an Impartial Hearing Officer or at an appellate review for all or part of the Full Tuition funding from the local school district . . . those payment obligations as outlined in the Order on Pendency shall be due within 30 days of the order being issued. Payment obligations shall remain in effect until the Order on Pendency is no longer active. . . .

     (b) It is understood Parent may seek public funding from the local school district to pay for Student's Full Tuition due to [the Brain Institute] for the School Year by asserting Student's due process rights by seeking an Order on Pendency. In the event Parent seeks and is denied an Order on Pendency by an Impartial Hearing Officer or at an appellate review for all or part of the Full Tuition funding from the local school district . . . Parent will be permitted to immediately withdraw Student from [the Brain Institute] by terminating this contract per Section 11. Parent will be required to execute a payment schedule to comply with the contractual obligations based upon financial need of Parent for any balances due to [the Brain Institute] on the date of withdrawal.

(Ashanti Aff., Ex. KK, Addendum § 8)

     In sum, in the event that funding is not obtained from DOE, the enrollment agreement permits the parent to terminate the contract. However, the agreement makes clear that Plaintiff may still be liable for fees incurred prior to the date of withdrawal. As set forth in E.M., such potential "exposure to suit for nonpayment" can constitute an injury in fact. E.M., 758 F.3d at 459.[5]

---

[5] Cohen v. Department of Education, 2018 WL 6528241 (S.D.N.Y. Dec. 12, 2018) is not to the contrary. As noted above, in that case plaintiffs had prevailed on the pendency issue before the hearing officer, but then sought injunctive relief in the district court after DOE refused to make tuition payments to the Brain Institute, which the hearing officer had determined was the pendency placement. Id. at *1. The Cohen court's standing analysis focused on Plaintiffs' claim that there was an "imminent risk of [the student's] expulsion due to outstanding tuition bills." Id. There was no evidence that the student faced a risk of expulsion, however; indeed, no tuition bills were then outstanding. Id. at *2. The court thus concluded that "Plaintiffs' theory of harm posits a speculative injury – expulsion – based on a dubious premise – that M.C.'s tuition is currently owing." Id. Cohen does not address, however, whether potential liability for tuition payments at the close of the due process proceeding could constitute an injury in fact.

DOE also argues that to the extent Plaintiff can establish an injury sufficient for standing purposes, any such injury is not "fairly traceable" to DOE. (Def. Br. at 10) For an injury to be "fairly traceable" to a defendant, there must be "a causal nexus between the defendant's conduct and the injury." Heldman, 962 F.2d at 156 (citing Allen v. Wright, 468 U.S. 737, 753 n.19, abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)) DOE argues that there is no such causal nexus here, because any injury Plaintiff has established is based solely on the conduct of the impartial hearing officer. (See Def. Br. at 10 ("Plaintiffs therefore fail to establish even a skeletal basis for DOE's purported liability for the conduct of IHO Briglio.")) DOE argued before the hearing officer that Hope Academy and not the Brain Institute is the proper pendency placement, however, and the hearing officer accepted DOE's argument. Accordingly, Plaintiff's claim as to pendency lays against DOE and not against the hearing officer.

The Court concludes that Plaintiff has standing to bring this action.

**B.    Exhaustion of Administrative Remedies**

DOE argues that this Court lacks subject matter jurisdiction because Plaintiff has not exhausted her administrative remedies. (Def. Br. at 14)

IDEA contains an exhaustion requirement. See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002) (quoting 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution. . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been

brought under this subchapter.")) New York has a two-tier system of administrative review for claims brought under IDEA: the first level involves a hearing before and decision by an impartial hearing officer; the second level is an appeal to a state review officer, based on the record developed before the hearing officer. Generally, "appeal may be taken to either the state or federal courts only after the SRO has rendered a decision." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002).

Exhaustion of administrative remedies is not necessary, however, where "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." Id. (citing Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir.1987)). In Murphy, the Second Circuit held that "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite [of exhaustion]." Id. at 199. In reaching this conclusion, the court noted that the purpose of the stay-put provision is to "establish[] a student's right to a stable learning environment during what may be a lengthy administrative and judicial review." Id. (citing Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996)) Thus, "as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right." Id. at 200.

Relying on Murphy, courts in this Circuit have repeatedly rejected school districts' arguments that exhaustion of administrative remedies is required in the context of pendency claims. See Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 445 (2d Cir. 2015) ("The Board argues that the Parent was required to administratively exhaust her stay-put claim. The

Board is wrong: 'an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement. . . . Applying the exhaustion requirement to stay-put claims would create a loop of marathon proceedings, since each new round of administrative proceedings would itself be subject to a fresh round of judicial review." (citations omitted)); M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) ("A party seeking a judicial remedy for a violation of the stay-put provision need not exhaust its administrative remedies."); Avaras v. Clarkstown Cent. Sch. Dist., 2018 WL 4103494, at *3 (S.D.N.Y. Aug. 28, 2018) ("Though the IDEA requires exhaustion of administrative remedies prior to initiation of a federal lawsuit seeking relief under its provisions, the Second Circuit has explicitly held that, where the stay-put provision is invoked, a court of law may hear the application without it being raised on the administrative record first.").

Where, as here, a plaintiff seeks injunctive relief compelling a school district to comply with its stay-put obligations under IDEA, exhaustion of administrative remedies is not required. Accordingly, DOE's argument that this Court lacks subject matter jurisdiction is rejected.

## II.   **FAILURE TO JOIN A NECESSARY PARTY**

DOE also argues that this case must be dismissed because Plaintiff's claims are "asserted against the wrong party, and the Court cannot provide complete relief without the joinder of the IHO." (Def. Br. at 7) DOE cites no cases in support of this argument. In any event, the Court's findings concerning traceability of injury apply with equal force to this argument. Plaintiff's alleged injury is traceable to DOE, because DOE successfully argued before the hearing officer that the pendency placement is Hope Academy, while Plaintiff

contends that the proper pendency place is the Brain Institute. The hearing officer is not a necessary party to this action.[6]

## III. *YOUNGER* ABSTENTION

Finally, DOE argues that even if this Court has jurisdiction over Plaintiff's suit, the Court should abstain from exercising that jurisdiction in accordance with the principles set forth in Younger v. Harris, 401 U.S. 37 (1971). Pursuant to Younger, federal courts are "generally require[d] . . . to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) Such abstention is required "when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.'" Does v. Mills, 2005 WL 900620, at *5 (S.D.N.Y. Apr. 18, 2005) (citation omitted).

Here, Plaintiff's claim for pendency is brought under IDEA, and not the U.S. Constitution. In Does v. Mills, 2005 WL 900620 – the only IDEA case DOE cites where a court abstained pursuant to Younger – plaintiffs alleged that certain New York regulations – which would govern hearings brought under IDEA – were unconstitutional. (See Def. Br. at 17-18; see also Cmplt. 04-cv-2919 (Dkt. No. 1) ¶ 45) This case raises no such constitutional issues, nor does New York have an interest here comparable to that in Mills. DOE has not cited any case in which Younger abstention has been invoked with respect to a non-constitutional claim, much less a case involving Younger abstention and a pendency determination under IDEA.

---

[6] Plaintiff filed an amended complaint yesterday adding IHO Briglio and the New York State Education Department as defendants. (Dkt. No. 10) The addition of these parties does not affect this Court's decision concerning Plaintiff's application for injunctive relief.

Younger abstention has no application here.

## IV. WHETHER IRREPARABLE HARM NEED BE SHOWN

DOE contends that Plaintiff's application for injunctive relief should be denied, because she has not demonstrated that she will suffer irreparable harm in the absence of an injunction. (Def. Br. at 13)

The Second Circuit has long held that IDEA's stay-put provision "is, in effect, an automatic preliminary injunction. The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and balance of hardships." Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982); see also Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."); M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) (same).

DOE acknowledges that "[t]ypically, a plaintiff does not have to demonstrate an entitlement to preliminary relief under th[e] traditional test when a plaintiff is invoking their right to such pendency." (Def. Br. at 6) (citation omitted). However, DOE maintains that "where a plaintiff is entitled to pendency but is contesting what constitutes the status quo for that pendency and asserts that pendency placement should be effectuated at a new location," the plaintiff "must still show an entitlement to the 'extraordinary and drastic remedy' of a temporary restraining order and preliminary injunction." (Id.) (internal quotation marks and citations omitted).

DOE's sole support for this assertion is <u>Cohen v. New York City Dep't of Educ.</u>, 2018 WL 6528241 (S.D.N.Y. Dec. 12, 2018). In that case, plaintiffs contended that the Brain Institute was the proper pendency placement, and the hearing officer agreed. The hearing officer directed DOE to fund this placement pending resolution of plaintiffs' due process proceeding. <u>Id.</u> at *1. DOE refused to fund the placement and appealed to a state review officer. Plaintiffs then filed suit, seeking a temporary restraining order directing DOE to fund the placement. As discussed above, the court held that plaintiffs lacked standing and so dismissed the complaint. The court nonetheless went on to consider Plaintiffs' entitlement to injunctive relief. According to the <u>Cohen</u> court, the automatic injunction directive from <u>Zvi D. by Shirley D.</u> and its progeny "has less purchase . . . in a case where there is no meaningful threat that a student will be removed from his pendency placement." <u>Id.</u> at *2.

As an initial matter, this analysis is <u>dicta</u>, given the court's dismissal for lack of standing. In any event, this Court does not read <u>Cohen</u> as seeking to overturn well settled law that irreparable harm need not be shown to obtain injunctive relief regarding pendency. Instead, the <u>Cohen</u> court made the commonsense observation that plaintiffs – having prevailed before the hearing officer on pendency, and having not received any threat of expulsion or demand for tuition payments – had not shown that any "true danger exists" that would justify injunctive relief. <u>Cohen</u>, 2018 WL 6528241 at *3. The facts here are much different: an Interim Order of Pendency was entered by the hearing officer against Plaintiff, and when the state review officer directed the hearing officer to reopen the record to admit additional evidence, and to conduct the necessary substantial similarity analysis, the hearing officer merely entered a Final Order of Pendency confirming his original analysis.

This Court concludes that Plaintiff need not demonstrate irreparable harm in order to prove her entitlement to injunctive relief with respect to pendency.

## V.  WHETHER INJUNCTIVE RELIEF IS APPROPRIATE

As discussed above, in her application for a temporary restraining order and preliminary injunction, Plaintiff seeks (1) an order "revers[ing] [the impartial hearing officer's November 22, 2018] Final Order of Pendency"; a ruling "that the International Institute for the Brain . . . be deemed O.F.'s pendency placement"; an order "remov[ing] [IHO] Robert Briglio from [Plaintiff's case]"; and an order "enjoin[ing] the reconvening of the impartial hearing before IHO Robert Briglio with respect to O.F.'s pendency placement in the underlying due process proceeding." (Cmplt. (Dkt. No. 1) at 7; Order to Show Cause at 1-2).

For the reasons set forth in the SRO's decision (Ashanti Aff., Ex. GG, at 5-6), this Court concludes that there is no basis for removing IHO Briglio from this case. There is no evidence of bias. While this Court agrees with the SRO that IHO Briglio erred in ruling that Plaintiff must explain – as a prerequisite to a pendency determination – why O.F. could not return to Hope Academy, this legal error provides no basis for removing the hearing officer on grounds of bias. (Id. at 6; Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a basis for questioning a judge's impartiality.")) There is likewise no basis for this Court to interfere with the impartial hearing scheduled for January 10, 2019.

Similarly, this Court cannot rule that the Brain Institute is the proper pendency placement. As explained by the SRO, the evidentiary record must be supplemented to address whether the Brain Institute's educational program for the 2018-19 school year is substantially

similar to Hope Academy's educational program for the 2017-18 school year. (Ashanti Aff., Ex. GG, at 17-18)

The Court agrees with DOE that this Court "should not conduct its own fact-finding and develop the record on this question" when the state administrative tribunals are available to do so. (Def. Br. at 22)

In an IDEA case, "[a] court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies." F. v. City Sch. Dist. of the City of New York, 2016 WL 1274579, at *14 (S.D.N.Y. Mar. 31, 2016) (quoting E.M. v. New York City Dep't of Educ., 758 F.3d 442, 463 (2d Cir. 2014)). "A remand is appropriate when the educational expertise of the IHO and SRO is necessary to resolve an issue." (Id. (citing J.F. v. New York City Dep't of Educ., 2012 WL 5984915, at *10 (S.D.N.Y. Nov. 27, 2012) (remanding to IHO to assess adequacy of student's proposed classroom placement))) The Court concludes that a remand is necessary here to develop the record on the points identified by the SRO.

Accordingly, the hearing officer's Final Order of Pendency will be vacated, and the case will be remanded to the hearing officer for purposes of supplementing the evidentiary record as to (1) whether O.F. is receiving vision services at the Brain Institute, and (2) the similarity between the parent counseling and training services and assistive technology services O.F. now receives with the services he received at Hope Academy. Once the evidentiary record has been supplemented with this information, the IHO will issue – within 21 days of this Memorandum Opinion & Order – a revised Final Order of Pendency that will address, inter alia, whether the educational placement provided by the Brain Institute is substantially similar to the

placement provided by Hope Academy in the 2017-18 school year. Plaintiff's application for a temporary restraining order and preliminary injunction will otherwise be denied.[7]

## CONCLUSION

Plaintiff's application for a temporary restraining order and preliminary injunction is granted to the extent that the Impartial Hearing Officer's November 22, 2018 Final Order of Pendency is vacated. The hearing officer will supplement the evidentiary record as set forth above, and will issue a revised Final Order of Pendency addressing, inter alia, whether the educational placement provided by the Brain Institute is substantially similar to the placement provided by Hope Academy in the 2017-18 school year. Plaintiff's application for a temporary restraining order and preliminary injunction is otherwise denied.

---

[7] DOE contends that where a parent who has prevailed in a due process proceeding and obtained tuition reimbursement for a particular school year unilaterally decides to place the child at a different private school for a subsequent school year, there is no right to pendency at the new school. (Def. Br. at 21 n. 3) This Court makes no ruling as to this issue. Instead, this Court is remanding to the hearing officer to further develop the evidentiary record concerning substantial similarity, as discussed above. DOE has not disputed the SRO's determination that a substantial similarity analysis is appropriate, nor has DOE challenged the nature of that analysis as it is set forth in the SRO's decision. (See Ashanti Aff., Ex. GG at 12-14). Indeed, on January 3, 2019, DOE made a submission to the hearing officer stating that "[t]he DOE believes the pendency hearing should be re-opened pursuant to the SRO decision." (Liu Decl., ¶ 22 and Ex. 4) Accordingly, this Court's opinion merely grants relief that DOE has previously sought from the hearing officer.

The Clerk of Court will terminate the motion and will close this case. The

hearing scheduled for January 9, 2019, at 4:00 p.m. is adjourned sine die.

Dated: New York, New York
      January 9, 2019

                         SO ORDERED.

                        Paul G. Gardephe
                        United States District Judge